Granger, C. J.
Many questions have been ably argued by counsel, but we think the application of well settled principles of equity to facts about which there is little or no conflict in the evidence, furnishes a plain solution of the case.
The Huletts and Cunninghams were partners in the venture in the Manistee land. They bought jointly for the purpose of jointly selling and dividing the profits. While there was no complete copartnership, the nature of their venture was such that they owed to each other and to the business the same obligations as partners in an ordinary firm. For convenience, I may occasionally use the words “firm” and “partnership,” in referring to them.
Notwithstanding some suspicions and differences, and the refusal of the Huletts to pay their half of the money due *245 to the Fairbanks on October 1st, 1876, the Cunninghams in no manner notified tbe Pluletts of any purpose, by them, to terminate their said relations under the contract, or that they (the Cunninghams) would not, on or before December 2, 1876, pay their half of the sum required to prevent a forfeiture. If the Huletts were in fault in their complaints against Albert Cunningham and Ruggles, and in their refusal to pay their share of the October dues, the Cunninghams had a right to give notice that they refused to longer hold their contract relation towards -them, and would make no further payments on the contract, and to act accordingly.
But they did not so refuse. They gave no notice to the Huletts of any purpose to omit the payment of their share of the sum required to prevent the forfeiture. The relation of partners in the venture continued, and with it their obligation to make said payment if they had the means. Their money was actually on deposit at the place of payment; hence their ability was undoubted. Substantially the facts show two partners who secretly resolved to omit a payment that their contract (as between them and their copartners) bound them to make, and actively aided a third party to purchase the partnership property at a great loss to the partnership. In substance, their arrangement .with Nettle-ton was an agreement by them to so act, as to force a forfeiture of the joint interest in the Manistee lands, and to place in his hands the money that it was their duty to pay upon the joint debt, so that with it he could buy the lands comprising their joint venture without any consideration paid to or for the partnership. Plainly, such action by the Cunninghams was a fraud upon the Huletts. If the declarations of John Cunningham were in evidence it would seem that he represented to the Huletts, first, that the money would be paid, and afterwards that it had been paid. But we arrive at our conclusions without treating these declarations as evidence against Nettleton, and leaving their admissibility undetermined.
Nettleton knew the terms of the contract of June-9, *246 1874; the' partnership relation of the parties, and that the money loaned to him by the Cunninghams was in the New York bank for the purpose of paying the Cunninghams’ share of the sum due. He of course knew that by lending it to him the Cunninghams joined him in an effort to force the forfeiture. We think there can be no doubt that he was, in effect, conspiring with the two Cunninghams to defraud their associates in the venture. Whether he was to enjoy all the fruit of the fraud, or to share it with them, is immaterial. Equity will not permit him to hold the fruit against the defrauded parties. As against him the Huletts are entitled to a decree restoring their lands upon payment of the unpaid purchase money and interest.
It remains to consider the case as against the Messrs. Fairbanks. Under the contract they had a right to enforce a forfeiture in ease of a default. On November 2, 1876, by their agent Hall, they served the notice under which, unless the sum due should be paid on or before December 2,1876, the purchasers’ rights in the land would end. Several matters are urged against the validity of the forfeiture, but we will notice only one. Hall, the agent, on Nove’mber 2, was told by Hulett that he intended to pay in time to prevent a forfeiture; that he wished to induce the Cunninghams and Ruggles to make the payment, but if they did not he and his brother would. Having fully informed Hall as to his plans, he asked him, in case of any new move or change, to inform him of it. This Hall promised to do.
Knowing that the Huletts hoped to cause the Cunning ■ hams and Ruggles to pay $16,848.64 at the Importers and Traders Bank, in New York city, to the credit of the Fairbanks, on the October note, &e., Hall secretly so arranged that precisely that sum was paid at said bank to the credit of said Fairbanks early in November. Instead of reporting this to Hulett, he wrote the letter of November 18, stating only that the money was withdrawn, and requesting Hulett to treat the intelligence as confidential. When Hulett called at the bank the cashier told him that $16,848.64 had been remitted by Nettleton and credited to the Fairbanks *247 on November 10, 1876, and referred him to the New York firm of “Fairbanks & Co.” for full information, Hulett followed up the reference, and was told by Hatch that “ the Messrs. E. & T. Fairbanks & Co., or the First National Bank of St. Johnsbury, had received the money from another source for the amount of the note aqd interest.” Hatch added, that it was his impression that the money was received from the Cunninghams.
Being wholly ignorant of the Nettleton contract Hulett naturally believed that the note had been paid through the Cunninghams, as he desired, and he therefore did not pay it.
The cashier represented the Fairbanks. As he referred Hulett to the firm of which Hatch was a member, the information given by Hatch was, in effect, given by the cashier. As Hall knew Hulett’s plans and had full re§son to expect such inquiry by Hulett at the bank, these occurrences may have been anticipated by him. They were the work of Hall and the cashier, each of whom represented the Messrs. Fairbanks. Through them erroneous information on a material matter was given to Hulett. Because of it, he made no payment. Recognizing their contract right to enforce a forfeiture in a proper case, a court having equity powers should not hesitate to relieve against it where they so contributed to occasion the default.
Judgment of the district court reversed, and decree for plaintiffs.